# Exhibit "A"

Craig M. Rothenberg, Esq. – Attorney ID# 044381987
**LAW OFFICE OF CRAIG M. ROTHENBERG**
*Attorneys at Law*
12 Leigh Street
Clinton, New Jersey 08809
(908) 238-9991
Attorneys for Plaintiffs

| | |
|---|---|
| ALLONA JACKSON,<br><br>Plaintiff,<br><br>v.<br><br>CONGRA BRANDS, INC., RESTAURANT DEPOT LLC, NICK ALDUMURE, AUDY "DOE" (fictitious, last name unknown), VAMAL "DOE" (fictitious, last name unknown), MARALYN "DOE" (fictitious, last name unknown), JOHN DOE 1-10 (a fictitious name representing managers or employees that were responsible for the ordering, stocking, marketing and/or sales of products), ABC CORP. 1-10 (a fictitious name representing a class of fictitious defendants who designed, manufactured, assembled, marketed or sold the product or a component of the product), XYZ CORP. 1-10 (a fictitious name representing a class of fictitious defendants who sold, distributed or advertised the product),<br><br>Defendants. | SUPERIOR COURT OF NEW JERSEY<br>LAW DIVISION: ESSEX COUNTY<br>DOCKET NO.: ESX-L-<br><br>CIVIL ACTION<br><br>**COMPLAINT AND JURY DEMAND** |

Plaintiff, ALLONA JACKSON, residing at 48 Brighton Terrace, in the Township of Irvington, County of Essex, State of New Jersey, by way of Complaint and Jury Demand against the defendants says that:

### FIRST COUNT

1. On or about July 26, 2019, plaintiff, ALLONA JACKSON, was in her home at 48 Brighton Terrace, Irvington, New Jersey cooking on her stove.

2. While cooking, a can of PAM Cooking Spray, which plaintiff purchased at Restaurant Deport in Union, New Jersey, released its contents which caught fire and/or exploded, and caused serious and permanent injuries to plaintiff, ALLONA JACKSON, including burns.

3. The explosion and plaintiff's injuries were caused by defects in the PAM Cooking Spray can, designed, manufactured and distributed by defendant, CONAGRA BRANDS, INC., for defendant, RESTAURANT DEPOT LLC.

4. "PAM" is a brand name owned and operated by defendant, RESTAURANT DEPOT LLC, for the purpose of selling products manufactured by other companies in physical Restaurant Depot stores and on Restaurant Depot's online store as well as other online retailers across the State of New Jersey and Essex County.

5. At all times relevant to this complaint, Conagra Foods, Inc. was a Delaware corporation with its principal place of business in Chicago, Illinois. It is currently a registered trade name for defendant, CONAGRA BRANDS, INC.

6. At all times relevant to this complaint, defendant CONAGRA BRANDS, INC. was a Delaware corporation with its principal place of business in Chicago, Illinois. It was formerly known as Conagra Foods, Inc.

7. Defendant, CONAGRA BRANDS, INC., is the successor in interest to Conagra Foods, Inc.

8. At all times relevant to this complaint, defendant, CONAGRA BRANDS, INC. and/or Conagra Foods, Inc., did continually conduct business across the State of New Jersey including Essex County, making venue proper here.

9. Defendant, RESTAURANT DEPOT LLC, is a New Jersey domestic company with headquarters located at 1 Amity Street, Jersey City, New Jersey, and does business throughout the State of New Jersey through its physical stores, as well as through its online sales of the PAM brand, in particular in Essex County making venue proper here.

10. Defendant, RESTAURANT DEPOT LLC, did and continues to operate a Restaurant Depot at 1135 Springfield Road, Union, New Jersey where plaintiff purchased the can of PAM Cooking Spray.

11. Defendant, NICK ALDUMURE, AUDY "DOE" (fictitious, last name unknown), VAMAL "DOE" (fictitious, last name unknown), MARALYN "DOE" (fictitious, last name unknown), and/or JOHN DOE 1-10 (a fictitious name representing managers or employees that were responsible for the ordering, stocking, marketing and/or sales of products) were at the relevant times employed by Restaurant Depot at 1135 Springfield Road, Union, New Jersey and are residents of the State of New Jersey, and were responsible for the ordering, stocking, marketing and sale of the can of PAM Cooking Spray.

12. As a direct result of defects in the product designed, manufactured, sold and/or marketed by said defendants, plaintiff sustained serious, painful and permanent injuries on the aforementioned date, will in the future experience great pain and suffering, was caused to incur expenses for medical care and attention, will in the future incur additional expenses, has lost physical ability, time from work in the past and future, and has in the past, and will in the future, lose her right to the full enjoyment of life.

**WHEREFORE**, plaintiff, ALLONA JACKSON, demands judgment against the defendants aforesaid for damages, together with interest and costs of suit or such other compensation to which he may be entitled.

## SECOND COUNT

1. Plaintiff, ALLONA JACKSON, repeats and incorporates each and every allegation of the First Count as if specifically set forth herein at length.

2. At all times relevant to the allegations in this complaint, defendants were and are in the business of designing, manufacturing, assembling, testing, filling, labeling, advertising and promoting the sale of various food brands, including PAM Cooking Spray.

3. Defendants designed, manufactured, tested, filled, labeled and/or sold the canister of PAM Cooking Spray that exploded and is at issue in this case.

4. The canister of PAM Cooking Spray at issue was designed and manufactured with u-shaped vents on the domed bottom of the canister that were designed to open when the can buckled or when the bottom of the canister became convex instead of concave.

5. The canister of PAM Cooking Spray at issue was designed and manufactured so that when the can deformed and the u-shaped vents on the bottom of the canister opened, the internal contents of the canister would release through the vents and the pressure inside the can would be reduced.

6. The contents of the canister of PAM Cooking Spray at issue included not only cooking oil, but also propellants, including extremely flammable materials such as propane and butane.

7. Defendants designed, manufactured, tested, filled, labeled, promoted and/or sold PAM Cooking Spray for use in consumer and commercial kitchens as well as in other environments such as cookouts, grilling and baking.

8. The PAM Cooking Spray reached the plaintiff without substantial change in its condition and was stored and used in a reasonably foreseeable manner at the time and prior to the incident in question.

9. The canister of PAM Cooking Spray began spraying its extremely flammable contents through the u-shaped vents on the bottom of the can and/or exploded, causing burns and injuries to the plaintiff.

10. The PAM Cooking Spray did not meet the consumer expectations of reasonably foreseeable users of the product including the plaintiff.

**WHEREFORE**, plaintiff, ALLONA JACKSON, demands judgment against the defendants aforesaid for damages, together with interest and costs of suit or such other compensation to which he may be entitled.

### THIRD COUNT

1. Plaintiff, ALLONA JACKSON, repeats and incorporates each and every allegation of the First and Second Counts as if specifically set forth herein at length.

2. Defendants have a duty to place into the stream of commerce, manufacture, test, fill, label, distribute, market, promote, and sell PAM Cooking Spray and products that are not defective, unsafe and unreasonably dangerous when put to the use for which it was designed, manufactured, distributed, marketed, and sold.

3. Defendants did in fact design, manufacture, test, fill, label, market, promote, supply, distribute and/or sell PAM Cooking Spray to consumers, including the plaintiff.

4. Defendants expected the PAM Cooking Spray it was designing, manufacturing, filling, testing, labeling, marketing, promoting, supplying, distributing and selling to reach, and it did in fact reach, consumers in multiple states, including the plaintiff, without substantial change in the condition.

5. At the time the PAM Cooking Spray left the possession of defendants and the time the PAM Cooking Spray entered the stream of commerce, the PAM Cooking Spray was in a defective, unsafe and unreasonably dangerous condition. These defects include but are not limited to the following:

   a. The PAM Cooking Spray contains vents, metal thickness and other design features that make the container capable of releasing its contents under conditions where other cooking spray can designs do not have such risk;

   b. The PAM Cooking Spray was capable of releasing its contents at temperatures and pressures lower than defendants' specifications and/or performance standards allow;

c. The PAM Cooking Spray was capable of releasing its contents at temperatures and pressures lower than Defendants' other cooking spray can designs;

d. The PAM Cooking Spray was capable of releasing dangerous contents when other cooking spray can designs do not have such risk;

e. The PAM Cooking Spray used flammable and dangerous propellants that posed an unreasonable and unnecessary danger when other propellants do not have such risk;

f. The PAM Cooking Spray was not designed to withstand temperatures to which the PAM Cooking Spray container will foreseeably to be exposed during use and/or storage;

g. The PAM Cooking Spray releases its contents in an uncontrolled and rapid manner posing an unreasonable and unnecessary danger when other cooking spray can designs do not have such risk;

h. The PAM Cooking Spray releases its contents simultaneously with the can everting which poses an unreasonable and unnecessary danger and no warning to those in its vicinity when other cooking spray can designs do not have such risk;

i. Safer alternative cooking spray can designs existed that do not present the same risks associated with the PAM Cooking Spray;

j. Any alleged benefits of the PAM Cooking Spray are outweighed by the risks of the PAM Cooking Spray releasing their dangerous contents;

k. The dangers associated with the PAM Cooking Spray outweigh any alleged utility in the PAM Cooking Spray's design. The nature and magnitude of the risk of the can venting, exploding and/or catching fire was high in light of the intended and reasonably foreseeable uses of the products in and around heat sources in the kitchen, including stoves;

l. The likelihood that product users were aware of this risk was low, given that the product was designed and advertised to be used around stoves, and had no adequate warnings about possible dangers of doing so;

m. The likelihood of the PAM Cooking Spray causing and/or contributing to an explosion or fire due to venting was high in light of the intended and reasonably foreseeable use of the PAM Cooking Spray product around stoves and other heating sources;

n. The flammability of the PAM Cooking Spray product's ingredients and the PAM Cooking Spray product's risk of venting were more dangerous than a reasonably prudent consumer would expect when used in the intended and reasonably foreseeable manner of cooking;

o. At the time it left the control of the manufacturer, in the state of technical and scientific knowledge, reasonable and safer alternative designs were available with

respect to the combustibility and/or flammability of the ingredients, and alternative can design would have prevented the venting event and the injuries in this case without substantially impairing the usefulness of the intended purposes of the product; and

p. Were otherwise defective, unsafe and unreasonably dangerous and did not meet foreseeable consumer's expectations.

6. Upon information and belief, prior to the incident set forth herein, defendants were aware of DOT-2Q vented cooking spray containers releasing their contents at lower temperatures than is allowed by the manufacturing specifications and tolerances.

7. Upon information and belief, prior to the incident set forth herein, defendants were aware of DOT-2Q vented cooking spray containers releasing their contents at lower pressure than is allowed by the manufacturing specifications and tolerances.

8. Upon information and belief, prior to the incident set forth herein, defendants were aware of DOT-2Q vented cooking spray containers releasing their contents at lower temperatures than other cooking spray can designs.

9. Upon information and belief, prior to the incident set forth herein, defendants were aware of DOT-2Q vented cooking spray containers releasing their contents at lower pressure than other cooking spray can designs.

10. Upon information and belief, prior to the incident set forth herein, defendants were aware of DOT-2Q vented cooking spray containers releasing their contents during reasonably foreseeable uses.

11. At all times relevant to this complaint, plaintiff used the PAM Cooking Spray for its intended purpose, i.e., cooking spray, and stored it foreseeably and appropriately. There was no other reasonable cause of the PAM Cooking Spray's failure to properly perform other than the PAM Cooking Spray product being defective.

12. Plaintiff could not have discovered any defect in the PAM Cooking Spray through the exercise of due care.

13. Defendants, as designers, manufacturers, fillers, researchers, testers, inspectors, marketers, promoters, suppliers, distributors and sellers of food products are strictly liable for defects in design, manufacture, marketing, failure to warn and failure to recall.

14. Plaintiff did not have substantially the same knowledge regarding the dangers of the PAM Cooking Spray as the designers, manufacturers, fillers, researchers, testers, inspectors, marketers, promoters, suppliers, distributors and sellers.

15. Defendants in directly designing, manufacturing, filling, researching, testing, inspecting, marketing, promoting, supplying, distributing, and/or selling its product, PAM Cooking Spray, to plaintiff did so without adequate warning regarding the hazardous potential of its product.

16. Due to the conduct of the defendants, the PAM Cooking Spray canister exploded, and plaintiff, ALLONA JACKSON, was caused to suffer and sustain injuries of a permanent nature including, but not limited to, burns, scarring, and disfigurement. Plaintiff also suffered great pain and anguish in both mind and body. Plaintiff was hindered and prevented from plaintiff's usual and customary duties and affairs. Plaintiff will be in the future caused to endure great pain, suffering and disability and has expended and become liable for substantial sums of medical care and services while endeavoring to become cured and healed of said injuries and will continue to expend and become liable for additional costs for future medical treatment. Plaintiff wase also caused to lose earnings and will continue to lose earnings. Furthermore, plaintiff was unable to and will in the future be unable to attend to plaintiff's normal affairs and duties for an indefinite period of time.

17. Pursuant to N.J.S.A. 2A:58-C, et seq., (New Jersey Products Liability Act) plaintiff asserts all claims and causes of action against the defendants, including, but not limited to, breach of express warranties, strict liability, all claims and causes of actions pertaining to design, manufacture, sale and distribution of the defective PAM Cooking Spray which was not reasonably

fit, suitable or safe for its intended purpose as it was defectively designed, manufactured, and/or failed to contain adequate warnings and/or instructions.

**WHEREFORE,** plaintiff, ALLONA JACKSON, demands judgment against the defendants aforesaid for damages, together with interest and costs of suit or such other compensation to which he may be entitled.

## FOURTH COUNT

1. Plaintiff, ALLONA JACKSON, repeats and incorporates each and every allegation of the First, Second and Third Counts as if specifically set forth herein at length.

2. Pursuant to N.J.S.A. 2A:58C-2, the defendants are liable to the plaintiff because the defendant's design did not comply with express warranties, in that the product designed, was not fit for the uses it was advertised.

**WHEREFORE,** plaintiff, ALLONA JACKSON, demands judgment against the defendants aforesaid for damages, together with interest and costs of suit or such other compensation to which he may be entitled.

## FIFTH COUNT

1. Plaintiff, ALLONA JACKSON, repeats and incorporates each and every allegation of the First, Second, Third and Fourth Counts as if specifically set forth herein at length.

2. At all times relevant, it was the duty of defendants to adequately, test, label, market, promote, supply, distribute and/or sell PAM Cooking Spray products such that they would be reasonably safe for their intended use and would conform with the reasonable expectations of users.

3. Defendants' misrepresentations, failure to adequately warn, and protect from the dangers in its product includes but is not limited to the following:

   a. Failed to appropriately inform users of the dangers associated with the PAM Cooking Spray;

b. Withheld and/or misrepresented material facts regarding the PAM Cooking Spray's safety and fitness for use around stoves and other heating sources when in fact they are not safe for use in these areas;

c. Misrepresented material facts regarding the PAM Cooking Spray's safety by withholding information regarding adverse events and information about incidents of venting and injury caused by the cans;

d. After receiving post-marketing incident reports and/or testing data, defendants knew, or in the exercise of reasonable care, should have known that there was a significant risk of venting, fire, and burn injuries associated with the use and/or storage of the PAM Cooking Spray product and failed to communicate or warn users of this information;

e. Failed to halt the use of dangerous, flammable and/or combustible propellants in PAM Cooking Spray when it knew they were dangerous;

f. Continued to use dangerous, flammable and/or combustible propellants in PAM Cooking Spray in the United States when it knew they were dangerous and had been prohibited from using the same propellants in cooking spray containers outside the United States;

g. Failed to provide warnings or instructions concerning the risk of venting, risk of fire, and risk of burn injuries, in light of the likelihood that some users of the PAM Cooking Spray product would use the product in the kitchen and in close proximity to stoves, grills and heat sources;

h. Inadequately designing the PAM Cooking Spray warnings so that they fail to appropriately inform users of the information necessary to safely store and use the product without risk of releasing contents or causing an explosion or fire;

i. Failed to provide adequate warnings concerning the risk of venting, risk of fire, exposure and/or and risk of burn injuries;

j. Failed to provide adequate warnings concerning the types of propellants in the PAM Cooking Spray product including isobutane and propane;

k. Failed to provide warnings or instructions concerning the risk of venting, risk of explosion and/or fire, and risk of burn injuries, in light of incident reports that some people had suffered burn injuries due to venting during ordinary use of the PAM Cooking Spray product;

l. Failed to provide adequate instructions to persons cooking with and around their PAM Cooking Spray products;

m. Failed to provide adequate instructions concerning safe and/or safer methods of cooking with and around PAM Cooking Spray products;

    n.  Failed to conduct adequate testing on their PAM Cooking Spray products to determine the venting hazards to which consumers and individuals such as plaintiff may be exposed to while cooking with and/or around their products;

    o.  Failed to monitor and analyze what post-marketing reports observed with regard to individuals cooking with and around PAM Cooking Spray and/or substantially similar products;

4. Defendants knew or had reason to know that plaintiff, as a member of the general public for whose use the PAM Cooking Spray was placed into interstate commerce, would be likely to use or be around the PAM Cooking Spray in a manner described in this Complaint.

5. Prior to the incident set forth herein, defendants were aware of DOT-2Q vented cooking spray containers releasing their contents at lower temperatures than is allowed by the manufacturing specifications and tolerances.

6. Prior to the incident set forth herein, defendants were aware of DOT-2Q vented cooking spray containers releasing their contents at lower pressure than is allowed by the manufacturing specifications and tolerances.

7. Prior to the incident set forth herein, defendants were aware of DOT-2Q vented cooking spray containers releasing their contents at lower temperatures than other cooking spray can designs.

8. Prior to the incident set forth herein, defendants were aware of DOT-2Q vented cooking spray containers releasing their contents at lower pressure than other cooking spray can designs.

9. Prior to the incident set forth herein, defendants were aware of DOT-2Q vented cooking spray containers releasing their contents during reasonably foreseeable uses.

10. Defendants knew or reasonably should have known of the danger associated with the manner and circumstances of plaintiff's presence in the vicinity of and/or foreseeable use of the PAM Cooking Spray, which danger would not be obvious to the general public.

11. Plaintiff used the PAM Cooking Spray in a reasonably foreseeable manner.

12. Defendants, as designers, manufacturers, fillers, researchers, testers, inspectors, marketers, promoters, suppliers, distributors and sellers of food products are held to the level of knowledge of an expert in their field.

13. Plaintiff did not have substantially the same knowledge regarding the dangers of the PAM Cooking Spray as the designer, manufacturer, filler, researcher, inspector, marketer, promoter, supplier, distributor and seller: ConAgra Foods, Inc. and Conagra Brands, Inc.

14. As a direct and proximate cause of one or more of the foregoing acts or omissions by defendants, the PAM Cooking Spray canister exploded and plaintiff, ALLONA JACKSON, was caused to suffer and sustain injuries of a permanent nature including, but not limited to, burns, scarring, and disfigurement. Plaintiff also suffered great pain and anguish in both mind and body. Plaintiff was hindered and prevented from plaintiff's usual and customary duties and affairs. Plaintiff will be in the future caused to endure great pain, suffering and disability and has expended and become liable for substantial sums of medical care and services while endeavoring to become cured and healed of said injuries and will continue to expend and become liable for additional costs for future medical treatment. Plaintiff was also caused to lose earnings and will continue to lose earnings. Furthermore, Plaintiff was unable to and will in the future be unable to attend to plaintiff's normal affairs and duties for an indefinite period of time.

**WHEREFORE,** plaintiff, ALLONA JACKSON, demands judgment against the defendants aforesaid for damages, together with interest and costs of suit or such other compensation to which he may be entitled.

## SIXTH COUNT

1. Plaintiff, ALLONA JACKSON, repeats and incorporates each and every allegation of the First, Second, Third, Fourth and Fifth Counts as if specifically set forth herein at length.

2. Defendants, were aware of the hazard that existed in its/their PAM Cooking Spray and was/were also aware of the danger that was caused by the hazard to the users of its/their PAM

Cooking Spray aerosol can, however, defendants failed and refused to design the product so as to eliminate the hazard, or to guard against the hazard and danger, and/or to warn the users of the hazard and danger and/or failed to recall the product.

3. Defendant(s) conduct was/were willful and wonton in nature and constituted gross negligence and exposed plaintiff and those similarly situated to plaintiff to serious injury and death.

4. Defendant(s) knew or should have known of the defects in the product and failed to remedy the defect.

**WHEREFORE,** plaintiff, ALLONA JACKSON, demands judgment against the defendants aforesaid for damages, together with interest and costs of suit or such other compensation to which he may be entitled.

## JURY DEMAND

Plaintiff hereby demands trial by jury as to all issues contained herein.

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, notice is hereby given that Craig M. Rothenberg, Esq. is designated as trial counsel in the within matter.

## CERTIFICATION

I hereby certify, pursuant to Rule 4:5-1, that the matter in controversy is not the subject of any other action or arbitration proceeding nor is any other action or arbitration proceeding contemplated.

**LAW OFFICE OF CRAIG M. ROTHENBERG**
Attorneys for Plaintiff, ALLONA JACKSON

By: _____
CRAIG M. ROTHNBERG, ESQ.

Dated: July 19, 2021

# Civil Case Information Statement

### Case Details: ESSEX | Civil Part Docket# L-005617-21

**Case Caption:** JACKSON ALLONA VS CONGRA BRANDS, INC.
**Case Initiation Date:** 07/19/2021
**Attorney Name:** CRAIG M ROTHENBERG
**Firm Name:** CRAIG M. ROTHENBERG
**Address:** 12-14 LEIGH ST
CLINTON NJ 08809
**Phone:** 9082389991
**Name of Party:** PLAINTIFF : JACKSON, ALLONA
**Name of Defendant's Primary Insurance Company (if known):** Unknown

**Case Type:** PRODUCT LIABILITY
**Document Type:** Complaint with Jury Demand
**Jury Demand:** YES - 6 JURORS
**Is this a professional malpractice case?** NO
**Related cases pending:** NO
**If yes, list docket numbers:**
**Do you anticipate adding any parties (arising out of same transaction or occurrence)?** NO

**Are sexual abuse claims alleged by: ALLONA JACKSON?** NO

### THE INFORMATION PROVIDED ON THIS FORM CANNOT BE INTRODUCED INTO EVIDENCE
CASE CHARACTERISTICS FOR PURPOSES OF DETERMINING IF CASE IS APPROPRIATE FOR MEDIATION

**Do parties have a current, past, or recurrent relationship?** NO
**If yes, is that relationship:**
**Does the statute governing this case provide for payment of fees by the losing party?** NO
**Use this space to alert the court to any special case characteristics that may warrant individual management or accelerated disposition:**


**Do you or your client need any disability accommodations?** NO
    **If yes, please identify the requested accommodation:**


**Will an interpreter be needed?** NO
    **If yes, for what language:**


**Please check off each applicable category:** Putative Class Action? NO   Title 59? NO   Consumer Fraud? NO


I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with *Rule* 1:38-7(b)

07/19/2021
Dated

/s/ CRAIG M ROTHENBERG
Signed